## ESTATE OF ALEXANDER DUNSMUIR, DECEASED.
### [No. 23,158; decided March 27, 1905.]

Foreign Probate.—Where a Testator was Domiciled in this State at the time of his death, the courts of the forum of the domicile have no authority to admit his will to probate in this jurisdiction, upon the mere production of a duly authenticated copy of the will and the record of its admission to probate in a foreign country or sister state.

Foreign Probate.—An Order Admitting a Will to Probate in this Jurisdiction, upon production of a duly authenticated record containing a copy of the will and proving its admission to probate in a foreign country, is, where it affirmatively appears from the record that the testator was a resident of San Francisco at his death, beyond the jurisdiction of the court; and it will, on motion, be set aside as void upon its face.

Probate of Will.—A Will must, in the First Instance, be Probated in the forum of the domicile, that being the principal, primary and original place of administration. The law of the · domicile governs the admission of wills to probate.

Probate of Will.—Statutory Residence, in this State, Constitutes Domicile.—Under the provisions of the code, the words ''residence'' and ''domicile'' are used synonymously and interchangeably; and a finding that the testator was a resident of San Francisco at the time of his death is, in effect, a finding that he was domiciled there.

Foreign Probate—Domestic Wills.—Sections 1322-1324 of the Code of Civil Procedure, authorizing the admission to probate of a will upon production of an authenticated copy of the will and the record of its admission to probate elsewhere, have no application to the case of domestic wills, but apply only to foreign wills; that is, those made in other states or countries by persons domiciled outside this state. The heading of the article of the code in which sections 1322-1324 are contained is to be taken in connection with the sections themselves for the purposes of construction.

Probate of Will—Compliance with Statutes.—The admission of wills to probate, whether of residents or nonresidents, being a statutory matter, the court must be controlled in that regard by the provisions of the code, and it ordinarily cannot be governed by arguments of convenience or inconvenience or of hardship. Nor can it amplify its jurisdiction nor arrogate any power beyond that expressly given by the statute.

Probate of Will—Setting Aside on Motion.—An order admitting a will to probate, void upon its face, may be set aside at any time upon motion in the probate court, there being no limitation upon the

time within which such motion may be made and entertained, and it being unnecessary to resort to a bill in equity for the purpose.

**Probate of Will—Filing Certificate of Proof.**—While it has been the almost uniform practice here from early times to file a certificate of the proof of the will and of the facts found, signed by the judge and attested by the seal of the court and attached to the will, together with the transcript of the testimony of the witnesses, such procedure is not strictly required except in contested cases.

Motion to set aside judgment admitting will to probate.

Edward P. Coyne, A. Heynemann, Campbell, Metson & Campbell, E. V. Dodwell, and Charles H. Tupper, for the motion.

Charles S. Wheeler, Andrew Thorne, and A. P. Luxton, contra.

COFFEY, J.   This is a motion to vacate, set aside and declare null and void a judgment of this court entered May 9, 1900, admitting the will of Alexander Dunsmuir, deceased, to probate, and appointing James Dunsmuir executor thereof, upon the grounds (1) that at the time of making and signing said judgment the court did not have jurisdiction of the subject matter of said estate nor any jurisdiction to do any act in the premises, and (2) that at the time of making said order and signing said judgment the court did not have nor obtain jurisdiction of any of the persons interested in said estate and was without power to make or enter any order binding upon said estate or upon them.

The motion is based upon the records and papers on file in the matter of the estate and is made on behalf of Edna Wallace Hopper, a daughter and heir at law of Josephine Dunsmuir, deceased, who was the widow of Alexander Dunsmuir, decedent testator.

An affidavit accompanies the motion made by Sir Charles Hibbert Tupper, a practicing barrister and solicitor in British Columbia, Dominion of Canada, learned in the law of that realm, and the occupant at different times of the offices of minister of justice, attorney general, and solicitor general of the dominion.   Affiant is counsel for Mrs. Joan Olive Dunsmuir, mother of the decedent and the executor, and as such counsel engaged in an action instituted and now pending in

the supreme court of British Columbia, brought to revoke a certain probate of the will of Alexander Dunsmuir, the decedent, which was obtained on an application by James Dunsmuir, on motion of his counsel, A. P. Luxton, who applied for and obtained probate in what is known in that province as probate in common form. Affiant says that in obtaining probate of a will in common form the application is made, as it was in this case, ex parte, and the order admitting said will to probate was granted on the affidavit of James Dunsmuir, without notice to any of the heirs of the deceased, and without notice of any kind, such as by publication or otherwise. Probate in this common form is revocable under the laws of that province at any time and the executor who obtains such probate may be cited to bring in the will and propound it in solemn form. Without obtaining probate in common form, and without being so cited, or if being so cited, an executor may obtain probate of a will in solemn form by citing the heirs of the deceased and parties interested in the estate; in which case the procedure and law require strict proof of the death of the testator, of his capacity, and of the valid execution of the will. In the case of a foreign will, evidence is required that it has been recognized as valid by a court of the foreign country, or that it is valid according to the law of the foreign country in which the testator was domiciled when it was executed. Where all in interest have been cited, probate of a will in solemn form is irrevocable and absolute. Affiant further says that in the action now pending in British Columbia for the revocation of the probate herein, Mr. E. P. Davis, K. C., who is associate counsel in the case with Mr. A. P. Luxton for James Dunsmuir, has contended in argument before the supreme court that the effect of an alleged probate of this will which has been granted in this court in California was and is equivalent to a judgment in rem, and therefore, is binding throughout the world, if the domicile of Alexander Dunsmuir was in this state, and that the proceedings adopted in this court were equivalent to what is known in that province as proof in solemn form, and that the question of the valid execution of the will, or whether the docu-

ment was testamentary, and whether the testator had capacity, could only be raised in the court of his domicile.

Affiant finally says that the practice obtaining in British Columbia in respect to the proof of wills is similar to that of England and that the decisions of the English courts are authoritative and binding on this subject in that province.

The records in this matter, numbered 23,158, superior court, department 10, San Francisco, California, show that on April 26, 1900, James Dunsmuir presented and had filed his petition in which he represented that Alexander Dunsmuir died on or about the thirty-first day of January, 1900, in New York City, being a resident of the city and county of San Francisco, state of California, leaving a last will and testament, dated December 21, 1899, which by a judgment duly given and made on the 24th of February, 1900, by the supreme court of British Columbia (in probate) was duly proved, allowed and admitted to probate, and that such judgment, allowance and admission to probate was never in whole or in part appealed from, revoked, set aside, modified, or in any way affected, and that the same had become absolute; that the court which so admitted the will to probate had jurisdiction in the premises; that the decedent testator left estate within this city and county, which was described, and that it was necessary that the will, by duly authenticated copy, be admitted to probate in this state and in this court, and to have the same force as a will first admitted to probate in this state and that letters testamentary issue thereon. Petitioner produced and filed with his petition for probate a copy of the will with the usual authentication record averring that it appeared upon the face of said record that the will had been proved, allowed, and admitted to probate in a foreign country, to wit, British Columbia, and that it was executed according to the law of that place and of the place in which the same was made, to wit, the state of California. James Dunsmuir, the brother of deceased, was named as sole executor and sole devisee and legatee, and the value of the estate in California was averred to be about $154,000. The heirs were alleged in the petition to be, Josephine Dunsmuir, his widow, residing at San Leandro, Alameda county, Cali-

fornia; Joan Olive Dunsmuir, his mother, residing at Victoria, British Columbia; and the sole devisee, James Dunsmuir, his brother, the petitioner, residing at said Victoria, who consented to act as executor and prayed for probate as aforesaid. In the will testator describes himself as "I Alexander Dunsmuir of San Francisco California United States of America."

Upon the filing of this petition the court made an order appointing time and place for proving by a copy of the will and the probate thereof, duly authenticated, the last will and testament of Alexander Dunsmuir, and for hearing the application for letters and directing notice to be given by the clerk, which appears to have been done, and on the ninth day of May, 1900, the paper was by an order of the court admitted to probate. In this order or judgment is a recital, among others, that due proof had been made and the court found that the testator was "at the time of his death a resident of the city and county of San Francisco, state of California."

This is the record which is challenged as affording evidence on its face establishing its own invalidity, for it is shown thereby conclusively that the decedent testator was a resident of the state of California at the time of his death; and if the contention of the counsel for this motion be correct, that jurisdiction over the probate of wills is determined primarily by the last domicile of the person deceased and that the court exercising probate jurisdiction in the testator's last domicile has exclusive original authority to pass upon the validity of instruments purporting to constitute his last will, to admit or deny probate of the same, and to grant letters testamentary thereon, and that if foreign letters or authority be needful for facilitating a settlement of the estate, where suit must be brought abroad, or part of the property is there situated, the first requisite is to probate the will and procure letters within the domestic jurisdiction, then the proceedings in the case at bar manifest their own fatal infirmity, for it appears therein and thereon that the testator was domiciled here instead of abroad at the time of his death, and, in such case, there should have been original probate in the domiciliary forum, which

is the principal, primary, original, or chief administration, because the law of the domicile governs the distribution of the personal property, whether to heirs, distributees, or legatees, while that granted in any other country is ancillary or auxiliary. It is true these last descriptive words are not found in our statutes, but the principles are there, with local limitations.

The counsel for executor and opponent, conceding solely for the purpose of argument that the will of one who in his lifetime was domiciled in California can never be admitted to probate in this state upon an authenticated copy of the probate thereof in a sister state or in a foreign jurisdiction, insist, nevertheless, that an inspection of the record here fails to show that decedent was domiciled in California; and these counsel further say that nowhere in the codes is it provided that the petition or the record must affirmatively show the domicile of a decedent; they admit that in the petition for probate and in the order admitting the will to probate and in the authenticated document from British Columbia it is recited that decedent was a resident of this city and county, but they contend that it would not necessarily follow from such recitals that he was domiciled herein, for the words "resident," "residence," and "residing" have various shades of meaning covering the cases from mere sojourners to those permanently inhabiting and legally domiciled in a place. This distinction although ingeniously elaborated by counsel for opponent is not tenable under our statutes applicable to the case at bar. There can be only one residence, in a legal sense, in such a case. It is a fact upon which jurisdiction depends, and in our Political Code, section 52, the word "residence" is used as a synonym for "domicile." In the index to the Political Code we find, "Domicile: see Residence." The primary rule for determining residence is, that place must be considered and held to be the residence of a person in which his habitation is fixed, and to which, whenever he is absent, he has the intention of returning. It may be said, that in the state of California, statutory residence is domicile; but, it is insisted by opponent, that it not being essential that the record should show where the decedent was

domiciled, the recital of his residence is not inserted to comply with any law requiring a finding of domicile, and hence is to be given the meaning which would sustain rather than that which would destroy the jurisdiction, for every intendment is in favor of jurisdiction. This might apply, if there were any ambiguity in the expression here, but there is none. It appears from the record, constituting what may be called the "judgment-roll," that the decedent at the time of his death was a sojourner in New York, but a resident of San Francisco. It is nowhere in that record, to which we are restricted, suggested that he had a domicile elsewhere. Is it essential that this record should state the grounds upon which the court acted in admitting the will to probate? Probate proceedings being statutory, the court must derive all its power and jurisdiction from the statute to enter the judgment in the particular matter. The statute (section 1294, Code of Civil Procedure) on the head of jurisdiction of probate court when exercised over estate, says that wills must be proved and letters granted in the county of which the decedent was a resident at the time of his death, in whatever place he may have died. Section 1299 provides as to what person may petition for probate of will; and the petition must show, first, the jurisdictional facts: Section 1300. Now, we have seen from section 1294 that residence is a jurisdictional fact, and that it is equivalent to domicile, and it was found in this case, as appears by the order admitting the will to probate, in so many words, that Alexander Dunsmuir was "at the time of his death a resident of the city and county of San Francisco, state of California." This order or judgment further recited that due proof had been made to the satisfaction of the court and it found the truth of the allegations contained in the petition of James Dunsmuir filed herein on the twenty-sixth day of April, 1900, and of all the matters and things therein set forth. Among the allegations covered by this comprehensive clause was that the residence of the decedent laid in San Francisco.

It is provided in section 1308, Code of Civil Procedure, that if no person appears to contest the probate, the court may admit the will to probate on the testimony of one of the

subscribing witnesses only, if he testifies that the will was executed in all particulars as required by law and that the testator was of sound mind at the time of its execution; and the practice has been in this place, almost from time immemorial, to file a certificate of the proof and the facts found, signed by the judge, and attested by the seal of the court, and attached to the will, together with a transcript of the testimony of the witnesses. This practice, however, though having the authority of antiquity, is not strictly required except in contested cases: Sections 1317, 1318. It should appear upon the face of the record that the formalities prescribed by the code have been in all essentials complied with; it is a requisite that it shall be so shown that the will was executed under some jurisdiction and under some law, either the law of the place where the decedent died, or of the place where the will was propounded, or the law of California; but this record is silent upon that indispensable point and imparts no information which would authorize an inference or indulge a presumption that the requirements of the statute were fulfilled, even if inferences or presumptions were permissible in the premises.

All of these provisions of the codes from section 1294 to 1318, Code of Civil Procedure, both inclusive, relate to what is commonly called "original" probate, or probate of "domestic" wills. While this latter term is not found in the statutes, usage has applied it to these sections as contradistinguished from the documents treated in the succeeding article of the code, comprising sections 1322 to 1324, inclusive. Thus construing and co-ordinating these sections, we have two classes of wills: domestic and foreign. In the second class are included wills made in other states or foreign countries. Page on Wills defines a foreign will, in the sense that the term is used in the law of probate, as a will executed in a state or country by a testator there domiciled, admitted to probate there upon the death of such testator, and subsequently offered for probate in another state. Page says that the statutes for admitting a domestic will to probate, and for the effect of the order of probate, are generally taken as analogies in cases of foreign wills

where applicable. The article of the Code of Civil Procedure of California concerning this latter class is headed: "Probate of Foreign Wills." Section 1323 is entitled: "Proceedings on the Production of a Foreign Will," and section 1324, "Hearing Proofs of Probate of Foreign Will." Our supreme court has decided that these headnotes are parts of the statute limiting and defining the sections to which they refer, and to refuse to give them effect according to their import would be to make the law, not to administer it. If, then, there be a "foreign" will, there must, of necessity, be a "domestic" will; for the effect of the rule laid down by the appellate tribunal is to write into the body of the sections under article 3, title 11, chapter 2 the word "foreign," thus making the context correspond with the headnotes of the sections and the title of the article. Were it not for these provisions, there would be no law in this state authorizing the admission of a testament made in another jurisdiction, and it is clear that the intent of the legislation was to extend by courtesy to citizens of another state and subjects of a foreign country the privileges granted to residents within our own borders, thus by comity enabling nonresidents to share equally with our own people the benefits of our laws. All the rights of either resident or nonresident are derived directly from the statute. This court cannot amplify its jurisdiction, nor arrogate any power beyond that expressly given to it by the statute; even though by such self-denial great hardship, inconvenience or loss might result in any particular case. It may be, as counsel assert, that to hold that our courts have no jurisdiction to admit to probate upon an authenticated copy the will of a person whose domicile was California would invalidate the titles to millions of dollars worth of real property; but if the statute commands, the courts are bound to obey, at whatever hazard to individual fortune. At the same time, the court should be careful to avert such a calamity, unless the mandate of the law is imperative and absolute. As an original question, this court would be bound, under its view of the meaning of the statute, to hold that the primary place of probate was in San Francisco, and that the sections under the title "Pro-

bate of Foreign Wills'' have no application to wills executed by citizens domiciled in this state, but only to instruments made according to the laws of some other state or country.

As a general proposition, the will of a citizen of this state can be proved only by producing the original, although in certain circumstances, recited in section 1299, Code of Civil Procedure, our courts will admit to original probate a will which is beyond the jurisdiction of the court. It may be, as is said by counsel for opponents, that the proceedings in such cases are ordinarily costly and cumbrous, and that a far more convenient method is proof by exemplified copy, and that the public convenience would be subserved thereby, and that no hardship would result therefrom, and that all the protective provisions for proponents and contestants exist equally in both modes; but the argument of convenience or inconvenience and of hardship is always a dangerous one, especially in purely statutory matters. The code is the chart and compass of the court. Our courts, as was said in Sturdivant v. Neill, 27 Miss. 157, in adjudicating upon wills which depend solely for their validity upon our law must look only to that statute of which they are judicially informed, and not to the laws of another country, which can have no influence either way on the decision of the question. Counsel for opponent, however, insist that not only does the language of the statute cover the case—not only is the public convenience in favor of construing the statute according to its terms, but our supreme court has squarely decided the proposition in Goldtree v. McAlister, 86 Cal. 98, 24 Pac. 801. If this be so, it is an end of the controversy; but it is disputed that the exact question involved in this motion was decided in that or in any other case in California. It is a new point in this state as presented here. This is a motion made to set aside a judgment, because it is void upon its face. It is a direct attack upon that judgment. In the Goldtree case the issue as to this was incidental and collateral; the point decided was that the judgment, whether erroneous or not, was conclusive as against a collateral attack. This court has given to the opinion and to the records in that case a careful reading and fails to find that it is applicable to this motion. The only

cognate question determined there was that in a collateral proceeding the party could not ask to have the judgment set aside because of the fact that the record did not appear to be properly authenticated. That matter may be best understood by taking the statement of the point from the body of the opinion, on page 101: To the introduction in evidence of the record of the California probate proceedings the defendant objected on the ground that the probate court of San Luis Obispo county never acquired jurisdiction of the subject matter of the probate of the will, because the copies of the will and of the foreign probate thereof were not certified or authenticated as required by our statutes; held, conceding that the authentication of the foreign probate will is a jurisdictional fact, yet it belongs to that class of such facts which the court must find from the evidence and its decision thereon is conclusive as against a collateral attack. There were other points in that case upon which the judgment turned, but this was the only one pertinent to the discussion here, and the ruling thereupon cannot be considered as authoritative and binding on this motion which presents the issue for the first time in a direct manner. So far as this case is concerned, in this state it is a new question, and this court is without the advantage of authority in our reports up to date; but there are numerous decisions in other states which sustain the principle of this motion, and in all, where the circumstances are analogous, it has been declared that the statute relating to probate of foreign wills has no reference to a will executed in the state wherein the testator resided at the time of his death, and that the proper place of probate of such a will is in the domestic forum. In one of these cases, somewhat similar to this, it was said by the court that if we give to such a statute the broad construction contended for, that wills which must be executed according to the solemnities of our laws, may, nevertheless, be proved according to the laws of any other country, we, in effect, adopt the laws of that country in the particular case, and allow them to decide the validity of the instrument. This was never designed by the legislature. The statute was only intended to prescribe a certain and convenient mode of proceeding by per-

sons who, upon principles of national comity, might claim the assistance of our courts, when necessary, to enable them to assert their rights to property, or to enforce their remedies as creditors in this state, under wills which have been executed in another state or country, and properly established as such in the courts of that country. In another case it was said that if, in this class of cases, the legislature had precluded probate courts from inquiring into a fact, upon which their own jurisdiction depends, that when a copy of a will and its probate in a foreign country are presented, no inquiry can be had whether the original probate, and hence the primary administration, ought not to have been taken here, it would fall little short of a renunciation of the duty which the state owes its citizens to protect them in their rights of property, by seeing to it that the estates of persons deceased, whether real or personal, situated within our jurisdiction, be administered according to our laws. Nothing but language quite unequivocal and clear would warrant the conclusion that such was the legislative intent: Stark v. Parker, 56 N. H. 481. The statute in New Hampshire is similar to that in California, and in that case it was said that the question of domicile was all important. A comparison of the statutes will show the appositeness of the citation. There are sixteen states, including California, in which the statutes are almost identical, and twenty-four others where they are substantially similar, and a collation of the authorities in Woerner (*491-*496) exhibits a uniformity of judicial opinion that the law of the domicile of the decedent is the dominant factor in admitting his will to probate; it must be governed by the statute of the state in which he resided at the time of his death. There is no case cited from California, only section 1324, upon this point. Goldtree v. McAlister is alluded to (Woerner, *498) to support the proposition that the proceedings may not be impeached collaterally. This case is the main, if not the sole, reliance of the opponent of this motion; but, for the reasons already stated, this court does not regard it as absolute authority. In the Estate of Richardson, 120 Cal. 344, 52 Pac. 832, the point was not made or adverted to in the opinion or the record. It is true the court has the right to inquire

into the fact of jurisdiction, whether raised by the parties or counsel, but it does not always exercise that right. At all events, in the Richardson case the only question was, which of two applicants was entitled to letters of administration, and that was the only point decided. In the Matter of Ortiz, 86 Cal. 306, 21 Am. St. Rep. 44, 24 Pac. 1034, the question was not raised. In the case of Rogers v. King, 22 Cal. 71, all that the court decided was, that a judgment admitting a will to probate, made upon a petition stating all the necessary facts, and after the publication of due and legal notice of the application for probate, is conclusive of the validity of the will when called in question in any collateral proceeding or action. The opinion of the court was, that if, as was agreed, the petition stated all the necessary facts, the judgment of the court, the proper precedent steps having been taken, was conclusive as against a collateral attack. It does not meet the issue in the case at bar. The point here presented was not before the court in that case, nor in any other in California, in the form and on the facts of the record herein, on a motion directly assailing the validity of the probate. That at times wills have been admitted, as in the cases cited, without objection, without contest, and by tacit consent, does not authorize the courts, when the question is raised, to disregard the statute, because in some or many instances it has been erroneously interpreted in uncontested practice. If this court has read the cases correctly, the authorities under similar statutes in other states are adverse to the contention of opponent, and by "similar" is not to be understood literal sameness of language or words, but what counsel for opponent in argument describes as "substantially identical" with our own code provisions; there may be a verbal variance here and there, but the substance, the spirit, the thought, the reason, and, generally, in the cases cited herein, the expressions are the same.

This court appreciates the importance of the issues and the magnitude of the interests involved and dependent upon the final decision of this motion, although it may be mooted whether great mischiefs to domestic interests might not be wrought by sustaining the position of opponent, great as are

those he apprehends by the success of his adversary, and with this appreciation much labor has been bestowed upon the inquiry into the law of the case. The court has been reluctant from the first to a favorable view of a proceeding instituted after years of apparent laches and acquiescence in an act so solemn as a formal judgment affecting vast property rights; but where such a judgment or order is void upon its face, it does not appear that in California there is any time limit within which such a motion may be sustained. Our supreme court has decided that a judgment void upon its face may be vacated at any time upon motion, and this seems to be such a case. The suggestion of counsel for opponent that in the case at bar the party aggrieved should have recourse to a bill in equity, as the only appropriate remedy, is not tenable, if this motion be well based, for here where the error was committed it should be corrected; and the complainant should not be remitted to another forum while relief may be had in probate. If these views be correct, the motion should be granted.

----

In the Case of Dunsmuir v. Coffey, 148 Cal. 137, 82 Pac. 682, the supreme court affirms that, regardless of the distinction which may exist between the probate of domestic and foreign wills, and regardless also of the correct determination of the domicile of the deceased, the order admitting the will to probate in the principal case was in no sense void, and, supposing it to be erroneous, was valid until reversed directly upon appeal, and its validity could not be collaterally attacked. And in Estate of Dunsmuir, 149 Cal. 67, 84 Pac. 657, it was held that a motion cannot be entertained to vacate an order admitting a will to probate which is not void upon its face, after the lapse of the time prescribed by section 473 of the Code of Civil Procedure, and an order granting such motion will be reversed upon appeal.

A Court may Grant Original Probate of the Will of a nonresident who dies leaving either personal or real property within its territorial jurisdiction, without the will first having been proved in the courts of his domicile. But it is the duty of a court to refuse probate to an instrument offered as a foreign will, when satisfied from the evidence that the testator was in fact a resident of the state at the time of his death. When the will of a nonresident is admitted to probate on original proceedings for the purpose of administering on his property within the state, the decree therein binds that property here and everywhere that our courts are accorded full faith and credit, but it is not binding as to the will itself in

other jurisdictions where the deceased may have left property, nor is it binding on the courts of his domicile: Estate of Clark, 148 Cal. 108, 113 Am. St. Rep. 197, 82 Pac. 760, 1 L. R. A., N. S., 996; Estate of Edelman, 148 Cal. 233, 113 Am. St. Rep. 231, 82 Pac. 962; Rader v. Stubblefield, 43 Wash. 334, 86 Pac. 560; Estate of Clayson, 26 Wash. 253, 66 Pac. 410.

While a Foreign Will may be subject to contest when application is made to have it proved and recorded in a jurisdiction where the testator left property, still it should be observed that a judgment in a probate proceeding is a judgment in rem—that is, it determines the status of the matter. Therefore, the judgment of a court admitting a will to probate fixes the status of the instrument as a will, and becomes at once conclusive upon the world of all the facts necessary to the establishment of a will, among which are, that at the time the will was executed the testator was of sound and disposing mind, and was not acting under duress, fraud or undue influence. It follows, for example, that a will executed in California by a testator there residing, and subsequently admitted to probate in that state, may not, when afterward admitted to ancillary probate in Montana, where the testator left real and personal property, be contested on the ground that the testator was not of sound mind, or acted under duress, fraud or undue influence, the Montana statutes providing that when such foreign will is admittted to probate in this state, it shall ''have the same force and effect as a will first admitted to probate in this state'': State v. District Court, 34 Mont. 96, 115 Am. St. Rep. 510, 85 Pac. 866, 6 L. R. A., N. S., 617. A will is not subject to collateral attack after probate in foreign courts: Wells v. Neff, 14 Or. 66, 12 Pac. 84, 88. Where the court of another state has admitted a will to probate, it must be prima facie evidence that it based its adjudication as to domicile on sufficient evidence, and its judgment in that regard cannot be questioned collaterally: Corrigan v. Jones, 14 Colo. 311, 23 Pac. 913.